### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-00081 (JEB)** |
| | : | |
| **MICHAEL FOURNIER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Michael Fournier ("Fournier") pled guilty to two Class B misdemeanors, 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons explained below, the government requests that this Court sentence Fournier to 6 months of incarceration on Count Three and 36 months of probation on Count Four. Consistent with the plea agreement, the government further requests that the Court impose $500 in restitution payable to the Architect of the Capitol.

### I. INTRODUCTION

Fournier participated in the January 6, 2021 riot at the United States Capitol—a violent riot that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

_____

1 As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States

1

On January 6, Fournier: (1) spent nearly three hours within the restricted perimeter and inside the Capitol on January 6; (2) joined a disruptive mob at the Rotunda Doors where he chanted, "it's our house," minutes before that mob breached the doors; (3) unlawfully entered the Capitol through the Rotunda Doors despite the signs of violent entry—including the blaring alarm and the broken glass; (4) paraded around the Rotunda until he was forced out by police officers in riot gear; (5) turned around when exiting the building and placed his hands on an officer; (6) knew about the certification proceeding and shouted at officers, "You're defending fucking pieces of shit in that fucking building that are hijacking our fucking process . . . They are stealing our process. Your vote will never ever matter again"; and (7) late in the day, as police officers attempted to clear the grounds of the remaining rioters, hurled a flagpole at them.[2]

The government acknowledges that Fournier cooperated with the FBI by self-surrendering and accepted responsibility by pleading guilty. The government further acknowledges that Fournier may have prevented another rioter from stealing a painting at the Rotunda Doors of the Capitol. Those things mitigate but cannot excuse his contribution to the violence of the day. Indeed,

---

Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

2 After the entry of the plea agreement in this case, and in preparation for sentencing, the undersigned recalled an open-source video depicting the events on the west front of Capitol late in the day on January 6, 2021. The full version of that video is more than 6 hours long. The undersigned reviewed that video and discovered Fournier's flagpole toss for the first time.

by throwing a flagpole at officers, Fournier joined that violence. His conduct, which was aggressive and hostile, warrants a period of incarceration.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Riot at the Capitol on January 6, 2021

The government refers the Court, and incorporates by reference, the general summary of the riot at the Capitol on January 6, 2021 in the Statement of Offense, ECF No. 23, ¶¶ 1-7.

### B.  Fournier's Participation in the Riot at the Capitol on January 6, 2021

At 2:38 p.m., Fournier approached the Capitol from the east at the intersection of East Capitol Street and First Street NE. Open-source video captured Fournier on the East Plaza as several rioters can be seen climbing on top of government and police vehicles, as pictured below in Image 1. Shortly thereafter, Fournier proceeded to climb the steps to the area outside the Rotunda Doors. While there, Fournier joined the mob outside of the Rotunda Doors chanting, "It's our house," with his fist raised in the air, as shown below in Image 2.



*Image 1*



*Image 2*

    At 3:01 p.m., the mob successfully breached the Rotunda Doors for the third time on January 6. About one minute later, Fournier unlawfully entered the Capitol through the Rotunda Doors. By that time, the windowpanes in the Rotunda Doors had been smashed and an alarm was blaring. As shown in Image 3 below, upon entering the Capitol, Fournier appeared to be carrying a canned beverage in his right hand as he walked towards the Rotunda.

4



*Image 3*

At 3:03 p.m., Fournier entered the Rotunda and used his cell phone to take photographs in the Rotunda for the next several minutes. About three minutes later, a large group of police officers in riot gear and helmets flooded the Rotunda. Fournier directly faced these officers as they formed a police line to clear the Rotunda, as depicted in Image 4 below.



*Image 4*

As police pushed rioters back towards the Rotunda Doors, Fournier was forced to exit from the Rotunda into the lobby area near the Rotunda Doors. A few moments later, as shown in Image 5, Fournier attempted to leave the building. But Fournier was not successful as U.S. Capitol Police officers at the threshold of the Rotunda Doors were able to temporarily secure and shut those doors.



*Image 5*

At approximately 3:09 p.m., Fournier walked away from the Rotunda Doors and stopped to take a drink out of a can he was holding. Fournier then put the can down on the floor next to a bench and began to interact with another rioter who had picked up a painting. As shown in Images 6 and 7, Fournier took the painting from this individual, possibly stopping this individual from carrying it away. Fournier walked northwest with the painting out of view of the Capitol's CCTV surveillance cameras. *See* Government Sentencing Exhibit 1 (from 0:30 to 0:46 elapsed). To date, the government has not been able to determine what happened to the painting.



*Image 6*



*Image 7*

Two minutes later, at 3:11 p.m., Fournier walked back towards the Rotunda Doors, no longer carrying the painting. He then exited the Capitol through the Rotunda Doors which had been forced open again. While exiting, Fournier turned around, placed both his hands on a U.S. Capitol Police officer, and appeared to exchange words with that officer, as depicted in Image 8 below. *See* Government Sentencing Exhibit 1 (from 2:14 to 2:24 elapsed). Altogether, Fournier was inside the Capitol for about 10 minutes.



*Image 8*

Despite the blaring alarm, the broken glass, the police presence in the Rotunda, and interacting with a police officer in the entryway of the Rotunda Doors, Fournier did not leave the restricted area around the Capitol. After exiting the building, Fournier made his way to the west side of the Capitol where he remained within the restricted area on the Upper West Terrace for another two hours.

Around 3:45 p.m., Fournier joined the mob on the Upper West Terrace near an accessibility ramp where a police line had formed. Immediately after another rioter was arrested by police next to the ramp, Fournier looked directly at the police line. At one point, an individual spoke to the crowd using a bullhorn referencing people storming the Georgia statehouse on January 6, 2021.[3] In response, the mob cheered, including Fournier who raised his fist in celebration, as pictured below in Image 9. Fournier continued to walk around the Upper West Terrace in front of a police line of officers who were wearing tactical gear, including riot helmets, and carrying riot shields, as shown in Image 10 below. Despite these additional signs that he should not be there, Fournier still did not leave the restricted area around the Capitol.

---

3 *See generally* Reuters, *Fact Check: Protestors Did Not 'Storm' Georgia and Kansas Statehouses* (Jan. 8, 2021), https://www.reuters.com/article/world/fact-check-protestors-did-not-storm-georgia-and-kansas-statehouses-idUSKBN29D1YV/.



*Image 9*



*Image 10*

Almost an hour later, around 4:38 p.m., Fournier appeared at the stairs next to the inauguration stands on the southwest side of the Capitol. Fournier passed yet another police line, as shown in Image 11, which had taken a position behind temporary crowd control fencing with posted "area closed" signs.



*Image 11*

Around 5:06 p.m., Fournier appeared in the same area by the stairs next to the inauguration stand while tear gas was being deployed nearby. As depicted in Image 12 below, officer body-worn camera captured Fournier shouting at the line of police officers: "This is bullshit guys. You know it's bullshit. I feel like I'm in a CS chamber back in the army. What's going is bullshit. You're defending fucking pieces of shit in that fucking building that are hijacking our fucking process. You know it. You know it. Fucking know it man. Three fucking tours man . . . It's bullshit what's going on. They are stealing our process. Your vote will never ever matter again." *See* Government Sentencing Exhibit 2 (0:36 to 1:32 elapsed). Affected by the tear gas, Fournier used his scarf to cover his face and eyes, and also used eye drops, which were given to him by another rioter. At 5:08 p.m., Fournier descended the stairs down to the Lower West Terrace.



*Image 12*

Around 5:30 p.m., as darkness fell, Fournier walked along the West Plaza of the Capitol. Police deployed tear gas cannisters in Fournier's vicinity and he again used his scarf to cover his face from tear gas. *See* Government Sentencing Exhibit 3 (at 0:18 elapsed). Fournier then picked up a flagpole and charged a police line on the Lower West Terrace, as pictured below in Image 13. As he ran towards the police line, Fournier appeared to be preparing to throw the flagpole like a javelin at officers, but he tripped and fell at the last second. *See* Government Sentencing Exhibit 3 (from 0:39 to 0:50 elapsed). Fournier picked himself up and threw the flagpole at the officers. The flagpole landed within several feet of the officers, hitting the large blue "TRUMP" banner in front of them, as shown below in Image 14.

Altogether, Fournier remained unlawfully within the restricted area around the Capitol for at least three hours, from approximately 2:30 to 5:30 PM.



*Image 13*



*Image 14*

### C. Fournier's Letter to the FBI

On December 3, 2021, Fournier, through prior counsel, voluntarily provided a letter to the FBI. In that letter, Fournier admitted to entering the Capitol and remaining inside the building on January 6, 2021. According to the letter, FOURNIER started his day at the Washington Monument listening to President Trump's speech from approximately 12 to 1:15 p.m. After traveling to the Capitol, Fournier observed "hundreds of people" on the steps of the east front of the Capitol. He elected to continue walking towards the East Plaza of the Capitol, entering the restricted area. Moreover, in the letter, Fournier admitted to no longer possessing the photographs he took inside the Capitol. While in the Rotunda, Fournier acknowledged seeing "two or three Capitol Police Officers that looked like they had just engaged in a pepper spray battle" causing him to "realize[] he probably should not be there."

### D.  The Charges and Plea Agreement

On February 12, 2024, the government charged Fournier by Information for violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) (Count One); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building or grounds) (Count Three); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building). *See* ECF No. 10. On May 1, 2024, Fournier pled guilty to Counts Three and Four of the Information. Pursuant to the plea agreement, Fournier agreed to pay $500 in restitution to the Architect of the Capitol. *See* ECF No. 22 at 6.

### III.    STATUTORY PENALTIES

As noted by the plea agreement, Fournier faces up to six months of imprisonment and a fine of up to $5,000 for each count of violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). Fournier must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). Because both offenses constitute Class B Misdemeanors, the Sentencing Guidelines do not apply. *See* 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As explained below, the Section 3553(a) factors support a sentence of 6 months' incarceration, 36 months' probation, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Fournier's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors.

Fournier willfully joined the mob that disrupted the congressional proceedings on January 6, 2021. *See United States v. Mazzocco*, 21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers."). Specifically, Fournier joined the mob on the East Plaza of the Capitol where he chanted, "It's our house!" Minutes later, when that mob breached the Rotunda Doors, Fournier unlawfully entered the Capitol and paraded around the Rotunda until he was forced to leave by police officers in riot gear. Fournier ignored numerous warnings signs that the area was restricted—including the blaring alarm, the broken glass, the police presence, and his own admission that he saw officers affected by pepper spray in the Rotunda. And as Fournier exited the building, he turned around to confront and place his hands on an officer in in the entryway of the Rotunda Doors before leaving.

Despite all these signs, Fournier proceeded to the west side of the Capitol where he passed by multiple police lines and remained within the restricted perimeter for at least another two hours. As tear gas cannisters exploded in his vicinity, Fournier still did not leave, instead telling the

police, "You're defending fucking pieces of shit in that fucking building that are hijacking our fucking process." Late in the day, as police continued to deploy tear gas, Fournier exacerbated a dangerous situation by charging police and hurling a flagpole that landed within several feet of the officers. Had Fournier not tripped at the last second, the flagpole could have struck and even injured those officers.

Based on this conduct, Fournier was an active and aggressive participant in the mob that entered the Capitol, disrupted the congressional proceedings, and threatened police officers. The nature and circumstances of Fournier's offense establish the need for a sentence of both incarceration and probation.

### B. Fournier's History and Characteristics

Fournier does not have a criminal history. *See* PSR ¶¶ 39–62. He served in the United States Army from 2002 to 2010, earning a Bronze Star Medal for meritorious service in a combat zone. PSR ¶ 57. By the same token, nothing in Fournier's background mitigates his culpability for the crimes as part of the mob the breached the Capitol on January 6, 2021. To the contrary, he was 37 years old at the time of the offense and, as former member of the armed forces who swore an oath to defend the Constitution, he should have known better.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the riot on January 6.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an

attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### E.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. *See* 18 U.S.C. §§ 3553(a)(2)(B), (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

#### 1.   General Deterrence

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the U.S. Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." *United States v. Thomas Gallagher*, 21-CR-00041-CJN, Tr. 10/13/2021 at 37. General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power from one president to the next. There is possibly no greater factor that this Court must consider in imposing a just sentence.

#### 2.   Specific Deterrence

The need for the sentence to provide specific deterrence also weighs in favor of a period of incarceration. Fournier accepted responsibility by surrendering himself to the FBI and pleading guilty, and he may have prevented the theft of a painting. But Fournier has remained silent about his conduct and has not expressed remorse for his actions on January 6, 2021. After listening to the former president's speech, Fournier elected to join the mob on both the East and West Plazas

of the Capitol and unlawfully entered the building through the Rotunda Doors—knowing full well Congress' role in certifying the election results that day. With the 2024 presidential election approaching, and the continued revisionist history about January 6, the potential for a repeat of what happened looms large. The Court's sentence must deter Fournier specifically, and others generally, from going down the path of political violence again.

### F.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in the riot at the U.S. Capitol, ranging from unlawful entry misdemeanors, such this case, to assault on police officers, to conspiracy to corruptly obstruct Congress.[4] This Court must sentence Fournier based on his own conduct and relevant characteristics, but should give substantial weight to the context of other "defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

For example, in *United States v. James Robinson*, No. 22-cr-267 (DLF), the defendant pled guilty to one count of 40 U.S.C. § 5104(e)(2)(G), but the government subsequently discovered

---

4  A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

video evidence of the defendant punching a police officer in the Rotunda. Judge Friedrich considered the assault as relevant offense conduct and sentenced Robinson to six months of incarceration.

Similarly, in *United States v. Robert Reeder*, No. 21-cr-166 (TFH), the defendant pled guilty to one count of 40 U.S.C. § 5104(e)(2)(G), but the government subsequently found video evidence of the defendant grabbing and pulling on a U.S. Capitol Police officer around 4:30 p.m. on January 6, 2021, after he had already been inside the Capitol twice. Judge Hogan sentenced Reeder to three months of incarceration. Like Fournier, Reeder and Robinson engaged in assaultive or aggressive conduct and the Court imposed stiffer-than-normal sentences on misdemeanor charges. This Court should do the same here. Although Fournier's assault was not successful and the flagpole never hit its intended target, this Court should consider it as part of Fournier's relevant offense conduct and as part of his disorderly and disruptive conduct on Capitol grounds that day.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

## V.       RESTITUTION

The Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. § 3663, "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Fournier must pay $500 in restitution, which reflects in part the role Fournier played in the riot on January 6.[5] ECF No. 22 at 6. As the plea agreement reflects, the riot at the U.S. Capitol has caused approximately $2,923,080.05 in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. Fournier's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 90.

---

[5] Unlike the Sentencing Guidelines, under which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012).

## VI.    FINE

Fournier's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G) subject him to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine in addition to the agreed-upon restitution. *See* PSR ¶¶ 64-71.

## VII.   CONCLUSION

Balancing the § 3553(a) factors, the government recommends that this Court sentence Fournier to 6 months of incarceration on Count Three and 36 months of probation on Count Four. The government further requests that the Court impose, consistent with the plea agreement in this case, $500 in restitution payable to the Architect of the Capitol. Such a sentence promotes respect for the law and deters future political riots by imposing meaningful penalties on Fournier, who exacerbated a dangerous riot by charging police and throwing a flagpole at officers.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Jake E. Struebing*
JAKE E. STRUEBING
Assistant U.S. Attorney
D.C. Bar No. 1673297

23

U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6931
Email: Jake.Struebing@usdoj.gov